HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS JOHNSON, et al.,

    Plaintiffs,

    v.

COVENANT SECURITY SERVICES, LTD., et al.,

    Defendants.

CASE NO. C13-1983RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendant BNSF Railway Company and two Defendants in the Kimberly-Clark corporate family. No party requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion. Dkt. # 40.

## II. BACKGROUND

On September 23, 2010, Plaintiff Thomas Johnson was driving a tractor-trailer loaded with "hog fuel" to be delivered to a Kimberly-Clark facility in Everett, Washington. There are several railroad crossings at the facility, including one that the parties call the "east gate." There are at least five (and perhaps six) essentially parallel north-south railroad tracks at the east gate. A more-or-less east-west roadway crosses all of the tracks. A guard stationed in a shack in the northeast corner of the crossing controls arms that, when lowered, prevent drivers from crossing the tracks. Kimberly-Clark

ORDER – 1

contracted with Covenant Security Services, Ltd., to provide security services that included the control of the east gate crossing.

Mr. Johnson approached the east gate crossing from the east. The crossing arm was lowered, so he stopped behind the arm and just to the south of the guard shack. He waited for at least five and perhaps as many as fifteen minutes while the arm was lowered. Jim Elmer, a Covenant employee, was manning the guard shack. He had lowered the arm to allow the passage of a northbound train on the westernmost track. Mr. Johnson testified at his deposition that he could not see the tracks to the north of the crossing because the guard shack blocked his view.

When the northbound train cleared the intersection, Mr. Elmer raised the crossing arms. Mr. Elmer admits that before raising the crossing arms he did not look to inspect the tracks to the north of the crossing. Kimberly-Clark had also installed surveillance cameras with monitors in the guard shack, but there is no evidence that Mr. Elmer looked at those monitors to check the tracks to the north of the crossing. There is evidence that Mr. Elmer heard a train whistle just before he raised the arm, but that he assumed it came from the northbound train. Mr. Elmer admits that if he had repositioned himself to look to the north, he would have seen a southbound train approaching and he would not have raised the crossing arms.

Mr. Johnson testified that after the crossing arms lifted, he looked to the north and south "[a]s much as you can," but that again his northbound view was largely blocked by the guard shack. He did not see a southbound BNSF train approaching until he had already driven into the intersection. He was able to accelerate such that the train did not hit the cab of his truck. The train struck the trailer, overturned his cab, and caused him injuries.[1] He has sued Covenant, Kimberly-Clark, and BNSF for negligence.

---

[1] The court's description of the scene of the accident is its best attempt to unravel the testimony that is in the record. No one has provided the court with a map of the scene, no one has pointed out which of the tracks the southbound train was on, and no one has provided the court with a clear view of what Mr. Johnson or Mr. Elmer could have seen from their vantage points. Covenant provided some photos of the crossing, but labeled none of them.

ORDER – 2

BNSF and Kimberly-Clark have jointly moved for summary judgment. They contend that the evidence establishes as a matter of law that that the sole causes of the accident were Mr. Elmer's negligence and Mr. Johnson's negligence in failing to look to ensure there was no southbound train. Although he denies his own negligence, Mr. Johnson does not oppose their motion; he believes Mr. Elmer's negligence was the sole proximate cause of his accident. He named BNSF and Kimberly-Clark as defendants only because Covenant pointed to them as at least contributing causes of the accident. Covenant is the only party who has opposed its co-defendants' motion. The court now considers whether it can rule out BNSF's or Kimberly-Clark's liability as a matter of law.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

The motion concerns a simple negligence claim. A plaintiff claiming negligence must prove that the defendant owed her a duty and breached it, and that the breach was a proximate cause of an injury to the plaintiff. *Lowman v. Wilbur*, 309 P.3d 387, 389 (Wash. 2013).

ORDER – 3

1   Covenant's effort to point the finger at BNSF and Kimberly-Clark is based on
2   their joint failure to make a safer crossing at the east gate.  So far as the court is aware, no
3   one alleges that any BNSF or Kimberly-Clark employee or agent made errors on the day
4   of the accident.  In particular, no one alleges that the engineer and others operating the
5   BNSF train could have done anything to prevent the accident.  More importantly for
6   purposes of summary judgment, there is no evidence that the train operators were
7   negligent.

There is evidence, however, that the east gate crossing could have been safer.
Most obviously, the guard shack could have been situated such that it afforded drivers in
Mr. Johnson's position a less obstructed view of the tracks to the north.  Covenant also
argues that the crossing could have been controlled with crossing arms that automatically
lowered when a train was present on the tracks, as opposed to manually-controlled arms.
At a minimum, Covenant argues, the crossing could have had flashing lights or another
automated warning system to alert drivers to approaching trains.  Covenant also presents
evidence that a redesign of the guard shack a few years prior to the accident made the
north-facing window or windows much smaller, making it more difficult for the guard to
see to the north.  There is also evidence that changes to the control system for the
surveillance cameras made it more difficult to obtain a view of the tracks to the north.  In
addition, Covenant notes that at least one of the other crossings at the facility had a sign
advising drivers of a CB channel that they could use to communicate with the crossing
guard, whereas the east gate guard shack was not equipped with a CB radio.

A jury could conclude that Kimberly-Clark breached a duty to Mr. Johnson.
Kimberly-Clark, as the owner of the premises, had a duty to its business invitees[2] to
exercise reasonable care to protect them from dangers about which it knew or should
have known.  *Kamla v. Space Needle Corp.*, 52 P.3d 472, 477-78 (Wash. 2002).  A jury

---

[2] There is no dispute, for purposes of this motion, that Mr. Johnson was Kimberly-Clark's invitee.

ORDER – 4

could conclude, for example, that Kimberly-Clark knew or should have known that the guard shack at the east gate crossing obstructed the view of drivers in Mr. Johnson's position.  A jury could also conclude that relying solely on a security guard inside the shack was not reasonable care under the circumstances.  A jury could conclude that the volume of train traffic placed Kimberly-Clark on notice that it needed to take additional steps to prevent accidents in situations like this one, where Mr. Elmer fixated on one train, not noticing a second train coming in the opposite direction.  Kimberly-Clark complains that no authority establishes an affirmative duty to place guard shacks in a particular position, to employ automated crossing controls, or to take any of the measures Covenant suggests.  That argument misses the point.  Even if there is no general duty to take those measures at every railroad crossing, a jury could conclude that the number of tracks, sightlines to those tracks, and volume of train traffic at *this* crossing gave rise to a duty for Kimberly-Clark to do more than rely on the guard stationed in the shack.

Kimberly-Clark also argues that regardless of what it could have done to make the crossing safer, there can be no dispute that the proximate cause of Mr. Johnson's accident was Mr. Elmer's negligence.  A circumstance is a proximate cause when it is both a cause-in-fact of an injury and a legal cause of that injury.  *Lowman*, 309 P.3d at 389.  Defendants do not dispute in this motion that the failure to take additional safety measures could have been a cause-in-fact of Mr. Johnson's accident.  They ask the court to conclude, however, that Mr. Elmer's negligence was the *sole* legal cause.  The court agrees that the evidence establishes that Mr. Elmer's negligence was *a* legal cause of the accident, but the court cannot rule out that there were other legal causes.  Legal causation is a judgment grounded in policy determinations as to whether a defendant's breach of duty is too remote or slight to give rise to liability.  *Lowman*, 309 P.3d at 390.  Legal cause is a question of law for the court.  *McCoy v. Am. Suzuki Motor Corp.*, 961 P.2d 952, 958 (Wash. 1998).  Here, a determination of legal cause as to Kimberly-Clark requires a close examination of the layout of the east gate crossing, evidence as to the

ORDER – 5

sight lines from both the guard station and Mr. Johnson's position, and evidence as to the volume of train traffic at the crossing. That is the same close examination that the jury will undertake in deciding if Kimberly-Clark took reasonable safety precautions. *See Lowman*, 309 P.3d at 390 (noting the "interrelationship between question of duty and legal cause"). A jury might decide, for example, that the sight lines at the crossing (for a driver in Mr. Johnson's position) were such that it should have been apparent to Kimberly Clark that the guard station provided inadequate protection. Although the court decides legal cause, this case is one in which the determination of legal clause depends the examination of the factual questions underlying the determination of Kimberly-Clark's duty. The court lacks the evidence to undertake that close analysis itself. *See supra* n.1.

The court has focused its discussion on Kimberly-Clark, who responsible for the crossing as the owner of the premises on which it was located. BNSF's liability is less clear. The court has already ruled that BNSF bears no liability for the actions of the people operating the southbound train. The remaining question is whether BNSF shares responsibility with Kimberly-Clark for maintaining a reasonably safe crossing. No party has addressed that question, and the court declines to do so sua sponte. The court assumes, purely for purposes of this motion, that BNSF shared with Kimberly-Clark the duty to maintain a safe crossing.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' motion for summary judgment. Dkt. # 40.

DATED this 3rd day of June, 2015.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6